## STILZ v. BABCOCK & WILCOX CO.

(Circuit Court of Appeals, Second Circuit. December 2, 1924.)

No. 97.

Patents ⊂⊃328—Stilz patent, No. 1,066,161, claims 1, 5–7, covering oil burner using mechanical atomizer in connection with jet of steam, held not infringed.

Stilz patent, No. 1,066,161, claims 1, 5–7, covering oil burner embodying mechanical atomizer in connection with jet of steam, which in operation requires oil, high-pressure atomizing stream of air, and low-pressure combustion air, *held* not infringed by device using mechanical atomizer only, without steam, and using only oil and low pressure combustion air.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by Harry D. Stilz against the Babcock & Wilcox Company. Decree for defendant, and plaintiff appeals. Affirmed.

Harry B. Stilz, in pro. per.

Gifford & Scull, of New York City (Livingston Gifford and George F. Scull, both of New York City, of counsel), for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. This suit is for infringement of patent No. 1,066,163 granted July 1, 1913, to appellant. The claims in suit are 1, 5, 6, and 7, and are as follows:

"1. A nozzle having a small discharge orifice, means immediately adjacent to said orifice for producing a whirling motion in a liquid fluid passing therethrough, a casing surrounding said nozzle and having a restricted discharged port concentric with said orifice and means for causing a gaseous fluid passing through the space within said casing to enter said port in a whirling current."

"5. A liquid spray nozzle having a passage abruptly contracted at one end by a cone shaped surface into a small delivery orifice a transverse spiral within said passage and resting against the base of said cone shaped surface, a casing surrounding said nozzle and having a restricted discharge port in line with said orifice and means within said casing for whirling a gaseous fluid passing therethrough.

"6. In combination, a furnace having an admission hole through its casing, a nozzle having means for projecting a hollow cone shaped film of oil from a round unobstructed delivery orifice into said furnace through said hole, means surrounding said nozzle for producing a whirling stream of gaseous fluid directed so as to penetrate said film of oil and means for supplying air into the furnace through said hole.

"7. In combination, a furnace having an admission hole through its casing, a lining of refractory material for said hole, a nozzle having means for projecting a hollow cone shaped film of oil into said furnace through said hole, means surrounding said nozzle for producing a whirling stream of gaseous fluid directed so as to penetrate said film of oil, and means for supplying air into the furnace through said hole."

Oil burners have been used for many years commercially in burning fuel oil. The inventor says his invention relates to improvements in oil burners in which the oil is atomized principally by mechanical means and has for its object to produce a burner which shall be simple in construction and reliable and efficient in operation. In the patent appellant points out that in burning fuel oil, atomized in passing through the nozzles

which spray it in a fine film by mechanical means, it has been necessary, for obtaining the best results, to preheat the oil to such an extent that a portion of it will flash into vapor on encountering the lower atmospheric pressure. He points out that with these burners, some trouble has been experienced in starting the fire in a cold boiler without producing considerable smoke. He says that some fuel oils have such a small percentage of volatile matter that it is necessary to preheat the oil to such an extent that a portion of it will flash into vapor as it enters the furnace, and that when an ordinary mechanical atomizer such as a spiral, 15, and orifice, 14, is used, some trouble has been experienced in starting the fire in a cold boiler without producing considerable smoke. In order to secure perfect combustion with this kind of boiler, the inventor says that "a suitably directed jet of steam is a valuable adjunct for securing perfect atomization"; the steam introduced acts on the oil and produces results similar to those produced by the vapor where oils can be partially vaporized are used—steam is brought into action upon the oil in such a manner that the mechanical action (effect of spiral, 15, and pressure on oil) is not interfered with. The patent provides for a casing which is placed directly over the end of the mechanical sprayer, the casing having an annular conical passage leading down to an orifice, 14 concentric with the orifice, 14, and closely adjacent to it, and he directs high-pressure steam through the pipe into the annular passage, the steam rotating around the passage, 18, and finding its way to the orifice, 19, cutting across and into the cone of liquid oil just emerging from the orifice, 14. When the mixture of steam and oil emerges from the orifice, 19, it is the combined energy of the oil pressure in the pipe, 9, and the energy given by the rapidly moving steam particles coming through the pipe, 10. Oil is then broken up into a fine spray under the conditions of the heat and pressure which would not be sufficient to form such a fine spray if the mechanical atomizer alone were used. This, his adjunct to his mechanical atomizer, takes the form of the jet of steam. The inventor also shows a preferred form of supplying combustion air. It is a register, 4, over the hole, 8, in the furnace wall, this register being supplied with openings, 5, through which the air will be drawn by the furnace draft; this air will move in a path such that it will impinge upon the spray cone at approximately right angles to the path of the oil drops of the spray. He says

he can reduce and even shut off completely the steam jet after his fire has been started and the high furnace temperature reached; the greatest quantity of steam being used when the fire is being started. One of the objects of the new invention is the ability to shut off this "adjunct" and yet maintain perfect combustion. The steam may be shut off when the furnace is hot because the heat from the furnace will heat the burner and raise the temperature of the incoming oil so that the mechanical atomization alone will be sufficient to form the required spray. In other words, the steam adjunct is used merely to supplement the mechanical atomizer when working conditions are bad. It is the atomizing of the oil or the formation of the spray that the inventor is chiefly interested in. The subsequent combustion is referred to in the patent, for it states that the hole, 8, in the furnace, is made large enough not to interfere with the cone of oil spray and yet small enough to compel the combustion air flowing through into the furnace through the hole, 8, to contact with the atomized oil. The patent points out that the inventor can either cause the spray cone to completely fill the hole, 8, or to pass through the hole spaced from its edge. This will depend on the distance of the burner from the opening, 8, and on the angles of the spray cone, and this latter in turn will depend on the adjustment as to a steam flow and oil pressure. There is refractory surrounding the hole, 8, and after the burner has been in operation a short time, the heat from this refractory will assist the combustion; the oil spray and the combustion air having been mixed somewhat at least before reaching this refractory. In operation, it was found that the inventor's burner atomized perfectly without the steam jet, and when the temperature or pressure or both were dropped until the mechanical atomizer would not atomize, then on turning on the steam jet, atomization would be produced. It was found also that the mechanical atomizer must be working to at least such an extent that a cone of liquid would be formed between the orifice, 14, and the orifice, 19, of sufficient angle to fill the orifice, 19, otherwise the stream would simply circulate around the chamber, 18, and out of the orifice, 19, through the space between its walls and the column of liquid being projected through the orifice, 19, and from the orifice, 14. Thus the steam jet, in order to have an effect, must be so inclosed that it will be directed into the cone of liquid which emerges from the mechanically atomized orifice. The oil did not leave the

inner orifice in the conical spray. It has not broken into a spray at this time—it is a continuous liquid cone. If it were a spray, the steam would escape through part of the orifice, 19, without producing any effect on the oil. After the oil is atomized, it is impossible to break up the drops. The atomizing steam must be directed at a point on the conical film of oil emerging from the mechanical atomizer at 14 before the oil has traveled far enough to break into any kind of a spray, and the orifice must be restricted to the size of the outlet in 14 in order that the oil film will be caught by the rotating steam to be perfectly atomized. Outlet port, 19, is therefore restricted, and the casing, 17, surrounding the nozzle, is provided for. In other words, port, 19, is made small enough so that the mechanical oil film will fill it and act like a valve to prevent the escape of the steam without penetrating the film so that it may be atomized.

In claims 1 and 5 this restricted discharge port means a small opening, 19, somewhat larger than the small discharge orifice, 14, of the nozzle, 12, and in a casing, 17, surrounding said nozzle; that is, so close to it that the gaseous fluid (steam) will be directed into the conical film emerging from the small discharge orifice. In claims 6 and 7, these elements are described as means surrounding the nozzle for producing a whirling stream of the gaseous fluid (steam and compressed air) directed so as to penetrate said film of oil, while the hollow cone shaped film of oil is issuing from the orifice, 14, in a nozzle, 12. It thus appears the invention is limited strictly on the face of the patent to the structures shown in the drawings.

In the appellee's device, highly heated oil under high pressure, enters pipe 4', flows through passages 7' to the outer ends of tangential passages, 12', into the bottom of the conical recess, 15', where it is whirled as it moves to the orifice, 14'; this cone extending a very short distance from one-quarter to one-half an inch. The film then breaks up into fine drops which continue on in straight lines forming a continually enlarging cone of oil spray. The appellee's device atomizes by the pressure on the oil only. It is a mechanical atomizer, not a combined mechanical and steam atomizer, as is the appellant's. In order to mix combustion air with the oil spray before and as it enters the furnace chamber, the appellee provides an air register over the hole, 1, in a furnace wall, this register having openings, 5, through which the air enters. Openings, 5, are provided with movable vanes which are used to regulate the size of the openings, and therefore the amount of combustion air which will enter the furnace. These vanes also act to direct the air into the register tangentially and make it whirl. A casing, 3, leads from the register to the opening, 1, this casing being conical and having spiral blades in it at relatively low pitch to give a relatively slow turning motion to the combustion air flowing into the furnace. The appellant's embodies a combined mechanical steam atomizer either alone or as may be read from claims 6 and 7, in combination with means for supplying combustion air. Appellee uses a mechanical atomizer only as a means for supplying combustion air to the oil spray. This specific means is different in many respects from the appellant's for supplying combustion air. When the appellant's burner is operating, he is using three fluids to produce his result, oil, high-pressure atomizing steam or air, and low-pressure combustion air, and the appellee uses two only, oil and low-pressure combustion air. The appellant can shut off one of the fluids and still have his device working satisfactorily at times, but the appellee cannot shut off one of the fluids without stopping the operation.

Appellant contends that the appellee's mechanical casing, 3, surrounding the oil nozzle and the end of the casing as the restricted discharge port reads on claims 1 and 5— the means for whirling the gaseous fluid being the curved vanes in the casing, 3, and the inclined doors at the opening, 5. The gaseous fluid of these claims being the combustion air.

The appellant seeks to read claims 6 and 7 by saying the impeller plate, 15, which has become the means for producing the whirling stream of gaseous fluid, directed so as to penetrate the film of oil while the casing, 3, and the openings, 5, have become the means for supplying air into the furnace. But in making this contention for claims 1 and 6, the appellant is obliged to designate different parts of appellee's structure to meet the same elements in the different claims. In claim 1 appellant employs language without regard to the meaning of the claim as determined by his specification, and this can be done because the functions of the elements are omitted in that claim. But as to claim 6, the elements are described by a recital of other functions, and appellant necessarily selected the part, from which he argues that it has the function called for, and this part in appellee's structure is not a part which responds to the description of the same element in claim 1. He argues that the impel-

ler plate, *15*, is the equivalent of a casing having a restricted discharge port. Notwithstanding the existence and use of both the impeller plate and the cone, *3*, in appellee's device, as the appellant argues, the impeller plate, *15*, is the equivalent of casing, *3*, in appellee's structure. If the two devices were alike in structures or function, there would be no difficulty in reading one or many claims of the patent in suit in the same way on appellee's device, but there is no reason for designating different parts of appellee's device as the same element in appellant's claims according to whether the claim describes that element generically or specifically. The sole function of the bladed cone, *3*, of appellee, is to cause the low-pressure combination air to mix thoroughly within the oil spray after the latter is formed and it has nothing to do with the atomization. It is not contended in reading claims 6 and 7 to designate the air register cone, *3*, of appellee as a means which directs the whirling stream "so as to penetrate the film of oil." But instead, the impeller blade, *15*, of appellee is assigned to that element of claim 6. The air passing through the impeller blade of appellee's device plays no part in the atomization and does not penetrate the film of oil. The length of the mechanical film of oil in appellee's burner, measured from its apex to the atomizing orifice, is one-quarter to one-half an inch long before the oil breaks into a spray; the length of the cone depending on the pressure and the viscosity of the oil. If air in the appellee's device is to have any function in atomization, it must be directed so as to penetrate said film of oil as it issues from the atomizing nozzle and before it breaks into drops. Air directed in a cone of oil spray will not in any way affect the atomization; whereas, a stream of steam or air under high pressure directed into the oil film will have an atomizing effect; the pressure necessarily being sufficient to give velocity to the atomizing medium—steam or air.

We are satisfied that in the appellee's structure the oil is not directed into the oil film but into the oil spray, the air is not moving at sufficient velocity to atomize even if it were directed into the oil film, and tests made on the appellee's device prove that there is no difference in the atomization, whether the air is flowing or not. The air passing through the slots of the impeller blade is not directed to penetrate the oil film, because the impeller blade is too far in advance of the apex of the cone, and because the air continues to move away from the axis of the cone rather than toward it. The ve-locity of the air through the impeller blade, *15*, would have no effect on the cone of oil film even if it did strike it. In the test made upon the appellee's structure, where the white cards were passed quickly across the oil spray, one with the air on and the other with the air off, it resulted in showing that the oil drops in the two cases were about the same. The inflowing combustion air passing through the appellee's impeller blade, *15*, could not, in theory or practice, have any effect on the oil atomization, so that it does not function like the high-pressure steam of the appellant's structure in the matter of atomization. It is apparent that the alleged infringing device will produce a better mixture of the combustion air and the oil spray so as to give more perfect combustion—not atomization—for in appellee's device that is completed by the mechanical atomization alone.

Having reached these conclusions, there is no basis upon which to support the appellant's claim of infringement. We therefore need not consider the question of the validity of the patent which has been argued at bar. The decree below holding that there is no infringement is affirmed.

Decree affirmed.